UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

MATTHEW WILLIAMS,

Petitioner,

v.

ISIDRO BACA, *et al*.,

Respondents.

Case No. 3:19-cv-00575-MMD-CLB

ORDER

## I.   SUMMARY

Respondents have answered Petitioner Matthew Williams' *pro se* 28 U.S.C. § 2254 petition for writ of habeas corpus challenging his state criminal conviction by jury. (ECF No. 45.)[1] As discussed below, the Court denies the petition. (ECF Nos. 10, 12.)

## II.   BACKGROUND

In May 2016, a jury convicted Williams of eluding a police officer. (ECF No. 23-8.)[2] Affirming Williams' conviction, the Nevada Court of Appeals summarized the evidence presented at trial:

> The jury heard testimony that Trooper Duncan Dauber activated his emergency lights and initiated a traffic stop after determining Williams' car was traveling above the speed limit. Trooper Dauber was wearing his highway patrol uniform and driving a blue Harley-Davidson motorcycle with highway patrol markings. The emergency lights consisted of four red and blue lights that illuminated toward the front and six red and blue lights that illuminated toward the back.
>
> Trooper Dauber kept the motorcycle idling and the emergency lights activated when he got off the motorcycle to approach the passenger side of Williams' car. He ran Williams' California identification card through the dispatch center and learned there was a warrant for Williams' arrest. And

---

[1]Williams filed a reply in support of the petition. (ECF No. 59.)

[2]Exhibits referenced in this order are exhibits to Respondents' motion to dismiss (ECF No. 21) and are found at ECF Nos. 22-25.

he drew his handgun, pointed it at Williams, and ordered Williams to put his hands up.

Williams looked down the road, looked at the trooper in the rear-view mirror, put his car into drive, and drove away on a road that had other traffic. Trooper Dauber was able to reholster his handgun, store his citation gear, plug into the motorcycle's radio, put his gloves on, turn on the siren, and start pursuing Williams within a matter of seconds. He eventually lost sight of Williams' car and slowed down to 85 miles per hour to see if Williams had melded in with the traffic.

Trooper Dauber found Williams' car abandoned in the westbound fast lane of the Mount Rose Highway. The car had extensive damage to its right side and its airbags had deployed—these conditions did not exist during the initial traffic stop. There were scuff marks where the car had hit a concrete barrier and been deflected back through an intersection, and there were yaw marks where the car had travelled through the intersection. Trooper Dauber set up traffic control to prevent people from running into the back end of the car, and he and another trooper later pushed the car out of the way to open the lane to traffic.

(ECF No. 24-16 at 3-4.)

Initially, a grand jury indicted Williams on January 27, 2016. (ECF Nos. 22-2, 22-3.) Williams filed a pretrial habeas corpus petition challenging the sufficiency of the evidence. (ECF No. 22-19.) The state district court held a hearing and denied the petition. (ECF No. 23-5, 23-11.)

After trial and at sentencing, the state district court adjudicated Williams a habitual criminal and sentenced him to a term of five to 20 years. (ECF No. 23-20.) Judgment of conviction was entered on August 10, 2016. (ECF No. 23-19.)

Williams appealed, and the Nevada Court of Appeals affirmed his conviction and sentence on November 14, 2017. (ECF No. 24-16.) The Nevada Court of Appeals affirmed the denial of Williams' state post-conviction habeas corpus petition on September 10, 2019. (ECF No. 25-29.)

Williams dispatched this federal petition for writ of habeas corpus in September 2019. (ECF No. 10.) He filed what the Court deemed as a supplement in February 2020. (ECF No. 12 at 2-10.) Respondents have now answered the remaining claims.

///

2

1
2
3
4

## III.    AEDPA STANDARD OF REVIEW

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this Court's consideration of the petition in this case:

5
6
7

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

8
9

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

10
11

> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

12
13
14
15
16
17
18
19
20
21
22
23

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). This Court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

24
25
26
27
28

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent."

1  *Lockyer*, 538 U.S. at 73 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); citing

2  *Bell*, 535 U.S. at 694).

3      A state court decision is an unreasonable application of clearly established

4  Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court

5  identifies the correct governing legal principle from [the Supreme Court's] decisions but

6  unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S.

7  at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires

8  the state court decision to be more than incorrect or erroneous; the state court's

9  application of clearly established law must be objectively unreasonable. *Id*. (quoting

10  *Williams*, 529 U.S. at 409).

11      To the extent that the state court's factual findings are challenged, the

12  "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas

13  review. *See, e.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This clause

14  requires that the federal courts "must be particularly deferential" to state court factual

15  determinations. *Id*. The governing standard is not satisfied by a showing merely that the

16  state court finding was "clearly erroneous." *Id*. at 973. Rather, AEDPA requires

17  substantially more deference:

18      . . . [I]n concluding that a state-court finding is unsupported by
    substantial evidence in the state-court record, it is not enough that we would
19  reverse in similar circumstances if this were an appeal from a district court
    decision. Rather, we must be convinced that an appellate panel, applying
20  the normal standards of appellate review, could not reasonably conclude
    that the finding is supported by the record.

21

22  *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

23      Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be

24  correct unless rebutted by clear and convincing evidence. The petitioner bears the burden

25  of proving by a preponderance of the evidence that he is entitled to habeas relief. *See*

26  *Cullen*, 563 U.S. at 181.

27  ///

28  ///

4

1

**IV.     GRAND JURY PROCEEDINGS**

2

Nevada Highway Patrol Trooper Duncan Dauber was the sole witness. (ECF No.

3

22-2 at 7-20.) He testified that on January 29, 2016, he pulled Williams over for speeding

4

in Reno, Nevada. When he ran Williams' license through dispatch, he learned that

5

Williams had an active warrant out of California. Officer Dauber drew his gun and told

6

Williams to put his hands in the air. Williams looked in his rear-view mirror, put the car in

7

drive and sped away. When Dauber located Williams' vehicle, it was stopped in the fast

8

lane of a highway, there were tire skid marks though an intersection and he could see

9

based on the tire marks and the damage to the car that it had collided with the highway

10

wall. Williams was not in the vehicle. The grand jury returned an indictment for eluding an

11

officer. (*Id*. at 21.)

12

The district attorney made a record at the close of the proceedings:

13

Yesterday I received a letter from the retained counsel for Matthew
Williams: Lee Hotchkin. He informed me that the defendant, or at least the

14

target, was considering testifying at the Grand Jury. However, if he did, the
defense attorney intended to appear with him.

15

16

Before they started the Grand Jury, I checked the hall and the area, to
see if the target was there, or his attorney was there, and no one was

17

present.

18

Again, when I went out to get my first witness, I didn't see the attorney,
nor did I see the target at that time.

19

20

I was informed prior to this return calendar today, at around 4:29 p.m.,
from Kaili Lane, that the target was downstairs. And I told her at that point

21

that the proceeding had finished.

22

(*Id*. at 23.)

23

**V.      INSTANT PETITION**

24

**a.      Ground 1**

25

Williams contends that his trial counsel, Lee Hotchkin, was ineffective in violation

26

of his Sixth and Fourteenth Amendment rights by failing to appear at the grand jury

27

proceeding. (ECF No. 10 at 4-8.) Ineffective Assistance of Counsel ("IAC") claims are

28

governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668

5

1   (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective

2   assistance of counsel has the burden of demonstrating that (1) the attorney made errors

3   so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth

4   Amendment, and (2) that the deficient performance prejudiced the defense. *Williams*, 529

5   U.S. at 390-91 (citing *Strickland*, 466 U.S. at 687). To establish ineffectiveness, the

6   defendant must show that counsel's representation fell below an objective standard of

7   reasonableness. *See id*. To establish prejudice, the defendant must show that there is a

8   reasonable probability that, but for counsel's unprofessional errors, the result of the

9   proceeding would have been different. *See id*. A reasonable probability is "probability

10  sufficient to undermine confidence in the outcome." *Id*. Additionally, any review of the

11  attorney's performance must be "highly deferential" and must adopt counsel's perspective

12  at the time of the challenged conduct, in order to avoid the distorting effects of hindsight.

13  *Strickland*, 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that

14  counsel's actions might be considered sound trial strategy. *See id*.

15       Ineffective assistance of counsel under *Strickland* requires a showing of deficient

16  performance of counsel resulting in prejudice, "with performance being measured against

17  an objective standard of reasonableness, . . . under prevailing professional norms."

18  *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotations and citations omitted).

19  When the ineffective assistance of counsel claim is based on a challenge to a guilty plea,

20  the *Strickland* prejudice prong requires a petitioner to demonstrate "that there is a

21  reasonable probability that, but for counsel's errors, he would not have pleaded guilty and

22  would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

23       If the state court has already rejected an ineffective assistance claim, a federal

24  habeas court may only grant relief if that decision was contrary to, or an unreasonable

25  application of, the *Strickland* standard. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).

26  There is a strong presumption that counsel's conduct falls within the wide range of

27  reasonable professional assistance. *See id*.

28

1    The United States Supreme Court has described federal review of a state supreme

2    court's decision on a claim of ineffective assistance of counsel as "doubly deferential."

3    *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The

4    Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's

5    performance . . . through the 'deferential lens of § 2254(d).'" *Id.* (internal citations omitted).

6    Moreover, federal habeas review of an ineffective assistance of counsel claim is limited

7    to the record before the state court that adjudicated the claim on the merits. *See Cullen*,

8    563 U.S. at 181-84. The United States Supreme Court has specifically reaffirmed the

9    extensive deference owed to a state court's decision regarding claims of ineffective

10   assistance of counsel:

11   > Establishing that a state court's application of *Strickland* was
     unreasonable under § 2254(d) is all the more difficult. The standards
12   > created by *Strickland* and § 2254(d) are both "highly deferential," *id.* at 689,
     104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059,
13   > 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is
     "doubly" so, *Knowles*, 556 U.S. at 123. The *Strickland* standard is a general
14   > one, so the range of reasonable applications is substantial. 556 U.S. at 124.
     Federal habeas courts must guard against the danger of equating
15   > unreasonableness under *Strickland* with unreasonableness under §
     2254(d). When § 2254(d) applies, the question is whether there is any
16   > reasonable argument that counsel satisfied *Strickland's* deferential
     standard.
17

18   *Harrington*, 562 U.S. at 105. "A court considering a claim of ineffective assistance of

19   counsel must apply a 'strong presumption' that counsel's representation was within the

20   'wide range' of reasonable professional assistance." *Id.* at 104 (quoting *Strickland*, 466

21   U.S. at 689). "The question is whether an attorney's representation amounted to

22   incompetence under prevailing professional norms, not whether it deviated from best

23   practices or most common custom." *Id.* (internal quotations and citations omitted).

24   Specifically, Williams claims in ground 1 that he had told Hotchkin he wished to

25   testify and was in the courthouse during the grand jury proceedings waiting for his counsel

26   to call him to testify, but counsel never appeared. Williams claims that Hotchkin could

27   have had the prosecutor instruct the grand jury that another district attorney had agreed

28   to charge Williams with a misdemeanor, offered specific instructions regarding "a lesser

7

1   included felony," and cautioned the prosecutor to instruct the grand jury that Williams had

2   a constitutional right to remain silent. (ECF No. 10 at 7.)

3       Williams filed a pretrial habeas corpus petition. (ECF Nos. 22-19, 22-20.) He

4   argued that the State failed to provide reasonable notice of the grand jury hearing. (ECF

5   No. 22-20 at 4-6.) At the hearing on the petition, Hotchkin told the court that Williams first

6   went to Justice Court and was told he did not need to appear there. Hotchkin maintained

7   that he had been in his office the day of the grand jury proceedings trying to locate

8   Williams. Later that day, Williams was found waiting in the correct building for Hotchkin

9   and the grand jury proceedings. The state district court disagreed that improper notice

10  was provided:

11      [T]he State faxed a Notice of Grand Jury Investigation and Right to
        Testify to Defendant's counsel on January 20, 2016. The State also mailed
12      a copy of the notice to Williams. The State received a letter from defense
        counsel dated January 25, 2016, indicating that he had received the Notice
13      of Grand Jury, and that Williams was considering testifying. The grand jury
        proceedings in this case were conducted on January 27.
14

15      Under these facts, the court finds that the State complied with the
        provisions of NRS 172.241(2). Notably, there were five judicial days
16      between when the State faxed the notice on January 20, when the grand
        jury proceedings commenced on January 27. Further defense counsel's
17      letter of January 25 indicates that the notice was actually received.
        Accordingly, the court finds that Williams was provided proper notice of the
18      grand jury proceedings.

19

20  (ECF No. 23-11 at 3.)

21      Williams also argued that defense counsel could have ensured the prosecutor

22  informed the jury of his right to remain silent. (ECF No. 22-19 at 6-9.)

23      The state district court noted that the State failed to inform jurors of this right:

24      Williams next argues that in violation of NRS 172.095(1) the State failed
        to "[i]nform the grand jurors that the failure of a person to exercise his right
25      to testify as provided in NRS 172.241 must not be considered in their
        decision of whether or not to return an indictment." The State acknowledges
26      that this instruction was not given to the grand jury for this specific case.
        Nonetheless, the court takes judicial notice of the fact that the grand jury is
27      instructed on the right of a defendant not to testify when they are

28

8

empaneled. The court finds this instruction sufficient to comply with the dictates of NRS 172.095.

(ECF No. 23-11 at 4.)

The state district court also rejected Williams' argument that the grand jury should have been instructed on lesser included offenses:

Despite any other arguments raised by Williams including the failure to instruct the grand jury on lesser included offenses, the court finds that the testimony presented to the grand jury was sufficient to establish probable cause that Williams committed the crime of eluding a police officer. Notably, the State was not required to instruct the grand jury of the existence of any lesser included offenses.

(*Id*. at 5.)

Trooper Dauber also testified at trial, along with two other officers who responded when Dauber called for backup. (ECF No. 23-6.) Williams appealed. (ECF No. 23-24.) Affirming the conviction, the Nevada Court of Appeals addressed and rejected Williams' underlying complaints about the grand jury proceedings:

First, Williams claims the district court erred by denying his pretrial petition for a writ of habeas corpus because the State failed to provide reasonable notice of the time and place of the grand jury proceeding. However, the record demonstrates Williams received timely notice of the grand jury proceeding and the notice instructed him to contact the district attorney if he wished to testify before the grand jury. Williams did not inform the district attorney he wished to testify before the grand jury, so the district attorney was not required to forward any additional information. *See* NRS 172.241(2)(b); *Davis v. Eighth Judicial Dist, Court*, 129 Nev. 116, 120, 294 P.3d 415, 418 (2013). Based on this record, we conclude the district court did not err by denying Williams' pretrial habeas petition

(ECF No. 24-16 at 2.)

In affirming the denial of Williams' state post-conviction petition, the Nevada Court of Appeals concluded that he could not demonstrate prejudice:

The district court found the State presented sufficient evidence at the grand jury proceedings to demonstrate probable cause that Williams committed the charged offense. *See Sheriff, Clark Cty, v. Burcham*, 124 Nev. 1247, 1257-58, 198 P.3d 326, 332-33 (2008) (at the grand jury level, the State need only provide slight or marginal evidence). The district court determined Williams failed to demonstrate he was prejudiced by counsel's actions because he failed to demonstrate a reasonable probability of a

1
2
3

different outcome at the grand jury proceedings had counsel participated in the proceedings. The district court's factual findings are supported by substantial evidence, and we conclude the district court did not err by dismissing this claim without first holding an evidentiary hearing.

4

(ECF No. 25-29 at 3.)

5
6
7
8
9
10
11
12

The state trooper involved testified credibly before the grand jury. Hotchkin argued at the hearing on the pretrial habeas petition that Williams was not eluding the officer but merely fled because he feared for his life. This implausible argument did not persuade the state district court. Williams has not shown deficiency, and he cannot show prejudice. He has not demonstrated a reasonable probability of a different result before the grand jury. Therefore, he has failed to demonstrate that the Nevada Court of Appeals' decision was contrary to or involved an unreasonable application of *Strickland*. *See* 28 U.S.C. § 2254(d). Federal habeas relief is denied as to ground 1.

13

    **b.**     **Ground 2**

14
15
16

Williams argues that the prosecutor committed misconduct by vindictively seeking habitual criminal treatment in retaliation for Williams rejecting two guilty plea offers. (ECF No. 10 at 11-12.)

17
18
19
20
21
22

Williams took the stand at his sentencing hearing. He stated that after he rejected the first guilty plea offer, the State filed the notice of intent to seek habitual criminal treatment. (ECF No. 23-20 at 13-16.) Williams speculated that the State pursued habitual criminal enhancement in retaliation for Williams rejecting the first plea offer. The state district court denied Williams' motion to strike the notice of habitual criminal, finding no retaliatory purpose. (*Id*. at 57.)

23
24

The Nevada Court of Appeals agreed with the state district court that there was no retaliation:

25
26
27
28

    Third, Williams claims the district court erred by denying his motion to strike the State's notice of intent to seek habitual criminal adjudication. Williams argues the habitual-criminal-adjudication notice was filed after he refused to accept the State's plea offers and it violated the due process prohibition against vindictive prosecution. Williams asserts the State's first plea offer allowed him to plead without any risk of a habitual criminal enhancement but the State's second plea offer included a habitual criminal

enhancement. The district court found there was no "retaliatory purpose based upon the timing of this and the notice and the documents presented in that regard." The record supports the district court's finding, and we conclude it did not abuse its discretion by denying Williams' motion to strike. *See generally Schmidt v. State*, 94 Nev. 665, 666, 584 P.2d 695, 696 (1978) ("[W]e construe the prosecutor's conduct as merely presenting the appellant with the unpleasant alternatives of foregoing trial or facing charges on which he was plainly subject to prosecution. Such a mode of behavior cannot be viewed as violating the due process clause of the fourteenth amendment.").

(ECF No. 24-16 at 4-5.)

Williams presents no credible basis for his claim of retaliation. There is simply nothing in the record to support his contention. He has failed to demonstrate that the Nevada Court of Appeals' decision on federal ground 2 was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d). Accordingly, ground 2 is denied.

### c.    Grounds 3 & 6

In ground 3, Williams contends that the state district court did not make individualized determinations of every crime necessary to adjudicate him a habitual criminal and that the 20-year-maximum sentence imposed was disproportionate. (ECF No. 10 at 15-17.) In ground 6, Williams asserts that the state district court violated his Eighth Amendment rights by adjudicating him a habitual criminal. (ECF No. 12 at 7-8.)

The state district court reviewed all the judgments of conviction that the State submitted in support of its position that habitual criminal treatment was warranted. (ECF No. 23-20 at 50-56.) Hotchkin objected to several but had no objection with respect to at least two prior judgments of conviction. (*Id*.)

The state district court explained the sentence it imposed:

All right. I have reviewed the PSI, the criminal history. I was the judge for the trial. I saw the evidence presented there, and at this hearing. I've considered the age of the defendant, and the nature and gravity and duration of his prior criminal conduct. Based upon those factors, I do find that it is just and proper to find Mr. Williams to be a habitual criminal.

11

> I would note that, in addition to the priors presented here in court, he's essentially had an unabated criminal history since he turned 18, and a history of noncompliance, with the exception of an 11-month period right in the middle. And since that time, and even since this arrest in this court, he's continued to pick up felony cases. So I do believe it is just and proper that he be adjudicated as a habitual criminal.

(*Id*. at 58.)

The Nevada Court of Appeals rejected Williams' contentions that his sentence violated the prohibition against cruel and unusual punishment:

> Fourth, Williams claims his habitual criminal adjudication and 5- to 20-year prison sentence constitute cruel and unusual punishment because he has long suffered from drug addiction, he has predominately committed theft or property offenses, he was only sent to prison one time and paroled one time, and the instant offense did not justify a habitual criminal adjudication. Regardless of its severity, a sentence that is within the statutory limits is not "cruel and unusual punishment unless the statute fixing punishment is unconstitutional or the sentence is so unreasonably disproportionate to the offense as to shock the conscience." *Blume v. State*, 112 Nev. 472, 475, 915 P.2d 282, 284 (1996) (quoting *Culverson v. State*, 95 Nev. 433, 435, 596 P.2d 220, 221-22 (1979)); *see also Harmelin v. Michigan*, 501 U.S. 957, 1000-01 (1991) (plurality opinion) (explaining the Eighth Amendment does not require strict proportionality between crime and sentence; it forbids only an extreme sentence that is grossly disproportionate to the crime). Williams' sentence falls within the parameters of NRS 207.010(1)(a), and he does not allege this statute is unconstitutional. We note the record demonstrates Williams has at least two prior felony convictions and evidence of those prior convictions was presented to the district court at sentencing. And we conclude Williams' sentence is not grossly disproportionate to his crime and history of recidivism and it does not constitute cruel and unusual punishment. *See Ewing v. California*, 538 U.S. 11, 29 (2003) (plurality opinion); *see generally Arajakis v. State*, 108 Nev. 976, 983, 843 P.2d 800, 805 (1992) ("NRS 207.010 makes no special allowance for non-violent crimes or for the remoteness of convictions.").

(ECF No. 24-16 at 5-6.)

The State argued at sentencing that, with this conviction, Williams would be a 14-time convicted felon. (ECF No. 23-20 at 55.) The prosecutor urged that the habitual treatment was not a punishment for the crime of eluding, itself, but for Williams' recidivism and constant criminal conduct. (*Id*.) Hotchkin argued that though Williams has a serious

drug problem, he did not have a history of violence, and both deserved and would benefit from treatment for addiction. (*Id*. at 43-49.) The court concluded that Williams' criminal history, including the fact that he picked up new cases since the eluding incident, warranted habitual criminal treatment. Williams has failed to demonstrate that the Nevada Court of Appeals' decision on federal grounds 3 or 6 were contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court, or were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d). Accordingly, grounds 3 and 6 are both denied.

Therefore, the petition is denied in its entirety.

## VI.   CERTIFICATE OF APPEALABILITY

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a certificate of appealability (COA). Accordingly, the Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Under 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *See id*.

Having reviewed its determinations and rulings in adjudicating Williams' petition, the Court finds that none of those rulings meets the *Slack* standard. The Court therefore declines to issue a COA for its resolution of Williams' petition.

## VII.   CONCLUSION

It is therefore ordered that the petition (ECF Nos. 10, 12) is denied.

It is further ordered that a certificate of appealability is denied.

The Clerk of Court is directed to enter judgment accordingly and close this case.

DATED THIS 29th Day of September 2022.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

14